135 Nev., Advance Opinion 2

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DARRELL T. COKER, AN INDIVIDUAL,<br>Appellant,<br>vs.<br>MARCO SASSONE,<br>Respondent. | No. 73863  |

Appeal from a district court order denying a special motion to dismiss. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Affirmed.*

Randazza Legal Group, PLLC, and Marc J. Randazza and Alex J. Shepard, Las Vegas,
for Appellant.

Gentile, Cristalli, Miller, Armeni & Savarese, PLLC, and Dominic P. Gentile, Clyde F. DeWitt, and Lauren E. Paglini, Las Vegas,
for Respondent.

---

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal, we are asked to review a district court order denying appellant's special motion to dismiss. Central to its resolution are Nevada's anti-SLAPP statutes—specifically NRS 41.660, which authorizes a litigant to file a special motion to dismiss when an action filed in court is

19-00270

"based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." We first clarify that in light of recent legislative changes, the appropriate standard of review for a district court's denial or grant of an anti-SLAPP motion to dismiss is de novo. We next conclude that the district court properly denied appellant's special motion to dismiss for the reasons set forth herein.

*FACTUAL AND PROCEDURAL BACKGROUND*

Respondent Marco Sassone is an artist and painter who has created numerous works of art using media such as watercolor, oil paint, and serigraph throughout his career. After being informed that copies of his artwork were being advertised on various websites as original, signed lithographs—a medium on which Sassone contends he never produced nor sold his artwork—Sassone investigated the activity. It is Sassone's contention that the copies being sold were counterfeit, his signature was forged, and that this activity was part of an ongoing fraudulent scheme. He traced the sales back to appellant Darrell Coker and sued under Nevada's Deceptive Trade Practice and RICO statutes.

Coker then filed a special motion to dismiss under NRS 41.660, arguing that dissemination of artwork to the public is expressive conduct. It is Coker's contention that as such, his activity is protected by Nevada's anti-SLAPP statute. Additionally, Coker contends that dissemination of artwork is in the public interest, further warranting anti-SLAPP protection. In opposing this motion, Sassone argues that he filed the present action to enjoin Coker from injuring Sassone's reputation and reducing the value of his artwork—*not* to silence his speech.

The district court denied Coker's motion, finding that Coker failed to demonstrate that his conduct was "a good faith communication that

Supreme Court
OF
Nevada

(O) 1947A

2

was either truthful or made without knowledge of its falsehood," one of the statutory requirements for anti-SLAPP protection. Coker timely appealed.

## DISCUSSION

### Standard of review

Nevada's anti-SLAPP statutes aim to protect First Amendment rights by providing defendants with a procedural mechanism to dismiss "meritless lawsuit[s] that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights" before incurring the costs of litigation. *Stubbs v. Strickland*, 129 Nev. 146, 150, 297 P.3d 326, 329 (2013). Since enactment in 1993, these statutes have undergone a series of legislative changes to ensure full protection and meaningful appellate review.

Relevant here is the evolution of NRS 41.660, which authorizes defendants to file a special motion to dismiss when an action is filed to restrict or inhibit free speech. Before October 1, 2013, NRS 41.660 simply instructed courts to treat the special motion to dismiss as a motion for summary judgment, and thus, this court reviewed such motions de novo. *John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 753, 219 P.3d 1276, 1281 (2009), *superseded by statute as stated in Delucchi v. Songer*, 133 Nev. 290, 296, 396 P.3d 826, 831 (2017). In 2013, the Legislature removed the language likening an anti-SLAPP motion to dismiss to a motion for summary judgment and set forth a specific burden-shifting framework.[1]

---

[1]As amended in 2013, NRS 41.660 required a moving party to establish "by a preponderance of the evidence" that the communication in question fell within the anti-SLAPP statute. 2013 Nev. Stat., ch. 176, § 3, at 623-24. If established, the burden then shifted to the plaintiff to prove by "clear and convincing evidence" the probability of prevailing on the claim. *Id.*

2013 Nev. Stat., ch. 176, § 3, at 623-24. "The 2013 amendment completely changed the standard of review for a special motion to dismiss by placing a significantly different burden of proof on the parties." *Delucchi v. Songer*, 133 Nev. 290, 296, 396 P.3d 826, 831 (2017). Plaintiffs bore the heightened "clear and convincing evidence" burden of proof, and we accordingly adopted the more deferential abuse of discretion standard of review. *Shapiro v. Welt*, 133 Nev. 35, 37, 389 P.3d 262, 266 (2017).

However, NRS 41.660's burden-shifting framework evolved in 2015 when the Legislature *decreased* the plaintiff's burden of proof from "clear and convincing" to "prima facie" evidence. 2015 Nev. Stat., ch. 428, § 13, at 2455. As amended, the special motion to dismiss again functions like a summary judgment motion procedurally, thus, we conclude de novo review is appropriate.[2]

We find support for this reversion not only in general principles of appellate review, but also in California's anti-SLAPP jurisprudence. This court has repeatedly recognized the similarities between California's and Nevada's anti-SLAPP statutes, routinely looking to California courts for guidance in this area.[3] *See, e.g., Patin v. Lee*, 134 Nev., Adv. Op. 87, 429

---

[2]However, we note that the standard of review set forth in *Shapiro v. Welt* applies to actions where the proceedings were initiated before the 2015 legislative change.

[3]California's and Nevada's statutes share a near-identical structure for anti-SLAPP review. Both statutes posit a two-step process for determining how to rule on an anti-SLAPP motion. *Compare* Cal. Civ. Proc. Code §§ 425.16(b)(1), 425.16(e) (West 2016), *with* NRS 41.660(3)(a)-(b). Both statutes allow courts to consult affidavits when making a determination. *Compare* Cal. Civ. Proc. Code § 425.16(b)(2) (West 2016) (which permits courts to "consider the pleadings, and supporting and opposing affidavits"), *with* NRS 41.660(3)(d) (which permits courts to

P.3d 1248, 1250-51 (2018); *Shapiro*, 133 Nev. at 40, 389 P.3d at 268 (adopting California's "guiding principles" to define "an issue of public interest" pursuant to NRS 41.637(4)); *John*, 125 Nev. at 752, 219 P.3d at 1281 (describing both states' anti-SLAPP statutes as "similar in purpose and language"). As such, we turn to *Park v. Board of Trustees of California State University*, wherein the California Supreme Court explained:

> We review de novo the grant or denial of an anti-SLAPP motion. We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law.

393 P.3d 905, 911 (Cal. 2017) (citations omitted). In light of the 2015 legislative change to NRS 41.660, we find it appropriate to adopt California's recitation of the standard of review for a district court's denial or grant of an anti-SLAPP motion to dismiss as de novo.

Having clarified the applicable standard of review, we now turn to the merits of Coker's anti-SLAPP motion.

---

"[c]onsider such evidence, written or oral, by witnesses or affidavits, as may be material in making a determination"). Moreover, in NRS 41.665, the Nevada Legislature specifically stated that the standard for determining whether a plaintiff has satisfied its burden of proof under NRS 41.660 is the same standard required by California's anti-SLAPP statute. Given the similarity in structure, language, and the legislative mandate to adopt California's standard for the requisite burden of proof, reliance on California caselaw is warranted.

*Coker's conduct is not protected communication under Nevada's anti-SLAPP statute*

Under Nevada's anti-SLAPP statutes, a moving party may file a special motion to dismiss if an action is filed in retaliation to the exercise of free speech. A district court considering a special motion to dismiss must undertake a two-prong analysis. First, it must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). If successful, the district court advances to the second prong, whereby "the burden shifts to the plaintiff to show 'with *prima facie* evidence a probability of prevailing on the claim.'" *Shapiro*, 133 Nev. at 38, 389 P.3d at 267 (quoting NRS 41.660(3)(b)). Otherwise, the inquiry ends at the first prong, and the case advances to discovery.

We recently affirmed that a moving party seeking protection under NRS 41.660 need only demonstrate that his or her conduct falls within one of four statutorily defined categories of speech, rather than address difficult questions of First Amendment law. *See Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017). NRS 41.637(4) defines one such category as: "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum . . . which is truthful or is made without knowledge of its falsehood." Here, the district court dismissed Coker's anti-SLAPP motion without reaching the second prong, finding that Coker failed to demonstrate that his conduct was "truthful or made without knowledge of its falsehood." We agree, and further conclude that Coker failed to sufficiently prove that his

communication was made in direct connection with an issue of public interest.[4]

*Coker failed to demonstrate that his conduct was truthful or made without knowledge of its falsehood*

We clarified in *Shapiro v. Welt* that "no communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'" 133 Nev. at 40, 389 P.3d at 268 (quoting NRS 41.637). To satisfy this requirement, Coker relied on his declaration, wherein he swears that he bought the lithographs from a bulk art supplier and never personally created any copies of the artwork.[5] The issue here, however, is neither creation nor distribution. Rather, Sassone's complaint is based on Coker's representation of the lithographs as originals. Thus, Coker would need to provide evidence persuading this court that at the time he advertised and sold the lithographs online, he believed that they were originals and, thus, advertised them as such.

Tellingly, Coker has made no such statement. Nor has he provided this court with any evidence suggesting that he believed that the lithographs were, in fact, originals.[6] Absent such evidence, we conclude that

---

[4]We find no reason to address the other elements required for activity to fall within NRS 41.660's scope of protection, as Sassone does not dispute that his claim was based upon the challenged activity or that the communication was made in a public forum.

[5]Coker additionally argues that Sassone failed to produce evidence that Coker's conduct was untruthful or dishonest. We reject Coker's attempt to shift the burden, as NRS 41.660 clearly mandates that at this stage of the inquiry, it is Coker's burden—not Sassone's—to prove that his conduct was either truthful or made without knowledge of its falsehood.

[6]We acknowledge that Coker additionally provided photocopies of canceled checks he used to pay the bulk art supplier and a sworn declaration

Coker has failed to demonstrate that his conduct was truthful or made without knowledge of its falsehood.

*Coker failed to demonstrate that his conduct was made in direct connection with an issue of public interest*

Coker argues that "[t]he public has a right to and significant interest in the widespread access to creative works," thereby making his activity protected under NRS 41.660. Sassone again distinguishes that the challenged activity is not the mere dissemination of his artwork, but Coker's description of the counterfeit works as originals. In this respect, Sassone acknowledges that had Coker copied Sassone's works and sold the copies while disclosing them as such, Sassone would have no basis for his suit. We find this distinction imperative in concluding that Coker's conduct was not made in direct connection with an issue of public interest.

To determine whether an issue is in the public interest, we have adopted California's guiding principles:

> (1) "public interest" does not equate with mere curiosity;
>
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
>
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
>
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather

---

by Thomas R. Burke, a prominent anti-SLAPP litigator. However, upon review of this evidence, we find neither persuasive.

 

ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Shapiro*, 133 Nev. at 39, 389 P.3d at 268 (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)). Applying these factors, we find that the sufficient degree of closeness between the challenged statements and the asserted public interest is lacking, as Coker fails to demonstrate how false advertising and the sale of counterfeit artwork, the challenged activity, is sufficiently related to the dissemination of creative works.[7] Additionally, Coker does not argue, nor do we find support in the record, that the focus of Coker's conduct was to increase access to creative works or advance the free flow of information. Without evidence suggesting otherwise, we conclude that his focus was to profit from the sale of artwork, and that increased access to creative work was merely incidental. Thus, we cannot conclude that selling counterfeit artwork online, while advertising it as original, is related to the asserted public interest of dissemination of creative works.

The case cited by Coker does not compel a different result. In *Maloney v. T3Media, Inc.*, the United States Court of Appeals for the Ninth Circuit granted a media company's anti-SLAPP motion after the company was sued for distributing unlicensed photographs of NCAA student-athletes. 853 F.3d 1004 (9th Cir. 2017). The Ninth Circuit discussed the

---

[7]Regarding this factor, we further note that Coker defines his asserted public interest generally as the "free flow of information" and "[a] robust public domain," which can readily be categorized as broad and amorphous.

"public interest" element briefly in a footnote and summarily held that the activity was in the public interest "because the photographs memorialize cherished moments in NCAA sports history, and California defines 'an issue of public interest' broadly." *Id.* at 1009-10 n.3.

Following California's lead, we too define an issue of public interest broadly. However, Coker fails to explain how a holding specific to sports memorabilia is instructive here. We furthermore find nothing in the record or caselaw that justifies extending the definition of "an issue of public interest" to include the advertisement and sale of counterfeit artwork as original. Accordingly, we decline to do so. To hold otherwise in this case would risk opening the floodgates to an influx of motions disguising unlawful activity as protected speech. Finally, we reject Coker's general contention that the sole question under the first prong is whether the conduct is "expressive activity" and reiterate that courts determining whether conduct is protected under NRS 41.660 must look to statutory definitions, as opposed to general principles of First Amendment law. *See Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017) (adopting the Supreme Court of California's rationale that "courts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions" (internal quotation marks omitted)). Codified in NRS 41.637, the Nevada Legislature has provided courts with four specific categories of speech activity that fall within NRS 41.660's purview. NRS 41.637 functions *solely* to clarify the meaning of NRS 41.660 and limit the scope of its protection. Thus, to hold that NRS 41.660 applies broadly to all expressive conduct, as Coker compels this court to do, would render the specific limits set forth in NRS 41.637 meaningless.

Having identified two grounds for dismissal at the first prong of the analysis, we find no reason to address the second prong concerning whether Sassone demonstrated the requisite probability of prevailing on his claims.

## CONCLUSION

We therefore take this opportunity to clarify that the applicable standard of review under the 2015 version of NRS 41.660 is de novo. Upon an independent review of the record, we conclude that Coker has failed to demonstrate that the challenged claims arise from activity protected by NRS 41.660. Specifically, we find no evidence in his declaration, or otherwise, that confirms that he believed that the lithographs were originals. We further hold that advertising and selling counterfeit artwork as original work is not in direct connection with an issue of public interest.

Accordingly, we affirm the district court's denial of Coker's special motion to dismiss.

_____, J.
Parraguirre

We concur:

_____, J.
Cherry

_____, J.
Stiglich