140 Nev., Advance Opinion 56

IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVE WYNN, AN INDIVIDUAL,
Appellant,
vs.
THE ASSOCIATED PRESS, A
FOREIGN CORPORATION; AND
REGINA GARCIA CANO, AN
INDIVIDUAL,
Respondents.

No. 85804



FILED

SEP 05 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order granting an anti-SLAPP special motion to dismiss. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Affirmed.*

Pisanelli Bice PLLC and Todd L. Bice, Jordan T. Smith, Emily A. Buchwald, and Daniel R. Brady, Las Vegas,
for Appellant.

Ballard Spahr LLP and David Chavez, Las Vegas, and Jay Ward Brown and Chad R. Bowman, Washington, D.C.,
for Respondents.

BEFORE THE SUPREME COURT, EN BANC.

24-32139

By the Court, PARRAGUIRRE, J.:

In designing its anti-SLAPP statutes, Nevada recognized the essential role of the First Amendment rights to petition the government for a redress of grievances and to free speech, and the danger posed by civil claims aimed at chilling the valid exercise of those rights. 1997 Nev. Stat., ch. 387, at 1363-64 (preamble to bill enacting anti-SLAPP statutes). To limit that chilling effect, the statutes provide defendants with an opportunity—through a special motion to dismiss—to obtain an early and expeditious resolution of a meritless claim for relief that is based on protected activity. NRS 41.650; NRS 41.660(1)(a). District courts resolve such motions based on the two-prong framework laid out in NRS 41.660(3). Under the first prong, the court must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). If the moving party makes this initial showing, the burden shifts to the plaintiff under the second prong to show "with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b).

In this appeal, we consider the proper burden a public figure must carry to show a probability of prevailing on a defamation claim at the

---

[1]Having considered the petition for en banc reconsideration in this matter, as well as the response thereto, we have determined that reconsideration is warranted. *See* NRAP 40A(a). Accordingly, the petition for en banc reconsideration is granted. This court's previous opinion in this matter, *Wynn v. Associated Press*, 140 Nev., Adv. Op No. 6, 542 P.3d 751 (Feb. 8, 2024), is hereby withdrawn.

 

second prong of the anti-SLAPP framework. We clarify that, under the second prong, a public figure defamation plaintiff must provide sufficient evidence for a jury, by clear and convincing evidence, to reasonably infer that the publication was made with actual malice. Because respondents met their respective burden under prong one, and the public figure plaintiff in the underlying defamation action failed to meet his burden under prong two, we affirm the district court's order granting respondents' renewed special motion to dismiss.

## FACTS AND PROCEDURAL HISTORY

This appeal arises out of a defamation claim brought by appellant Steve Wynn—a prominent figure in Nevada gaming and politics—against respondents the Associated Press and one of its reporters, Regina Garcia Cano (collectively, AP Respondents).[2] Following national reports alleging years of misconduct by Wynn, Garcia Cano obtained from the Las Vegas Metropolitan Police Department (LVMPD) redacted copies of two separate citizens' complaints alleging sexual assault by Wynn in the 1970s. She wrote an article describing the allegations in the complaints, one of which alleged that Steve Wynn had raped the complainant three times at her Chicago apartment between 1973 and 1974, resulting in a pregnancy and the birth of a child in a gas station bathroom under unusual

---

[2]This case returns to us on appeal following our reversal of the district court's grant of AP Respondents' motion to dismiss based on the fair report privilege. *See generally Wynn v. Associated Press*, 136 Nev. 611, 475 P.3d 44 (2020).

circumstances (the Chicago complaint).[3] The Associated Press published the article.

Wynn filed a defamation complaint against AP Respondents, asserting that the allegations of sexual assault contained in the Chicago complaint were false and improbable on their face, and that AP Respondents published the article with actual malice. AP Respondents filed a special motion to dismiss pursuant to Nevada's anti-SLAPP statutes. Following limited discovery on the issue of actual malice, the district court granted a renewed version of AP Respondents' special motion to dismiss, finding that the article was a good faith communication in furtherance of the right to free speech in direct connection with an issue of public concern and that Wynn failed to meet his burden of establishing a probability of prevailing on the merits of his claim. Wynn now appeals that decision. He argues that the district court erred in finding both that AP Respondents met their burden under the first prong and that he failed to meet his burden under the second prong. Specifically, he argues that the district court misapplied the actual malice standard relevant to public figures under the second prong.

## DISCUSSION

"We review a decision to grant or deny an anti-SLAPP special motion to dismiss de novo." *Smith v. Zilverberg*, 137 Nev. 65, 67, 481 P.3d 1222, 1226 (2021). As explained above, the anti-SLAPP framework demands a two-prong analysis when considering a special motion to

---

[3]Following a bench trial on a defamation claim brought by Wynn against the complainant, a district court found that the Chicago complaint allegations were, in fact, false. *Wynn v. Associated Press*, No. A-18-772715-C (Nev. 8th Jud. Dist. Ct. Mar. 25, 2020) (Findings of Fact, Conclusions of Law, and Judgment).

 

dismiss. The first prong requires the court to "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). If the moving party makes this initial showing, the burden shifts to the plaintiff under the second prong to show "with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b). Because Wynn challenges the district court's rulings under both prongs, we will discuss each in turn.

*AP Respondents met their burden under the first prong*

To meet the burden under the first prong, the defendant must show "that the comments at issue fall into one of the four categories . . . enumerated in NRS 41.637." *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). The relevant category here is found under NRS 41.637(4), which protects a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood." Wynn argues that the district court erred in concluding that the article by AP Respondents satisfies this category. Specifically, he asserts that the article does not discuss an issue of public interest and that it was not truthful or made without knowledge of its falsehood.

In *Shapiro v. Welt*, we adopted guidelines for district courts to consider in distinguishing issues of private and public interest.[4] 133 Nev.

---

[4]Those guidelines are:

> (1) "public interest" does not equate with mere curiosity;

35, 39, 389 P.3d 262, 268 (2017). Here, the article and its surrounding context point to an issue of clear public interest. The article discusses two new allegations of sexual misconduct by Wynn on the heels of national reports alleging a pattern of misconduct spanning decades. In the weeks preceding publication of this article, Wynn resigned as CEO of Wynn Resorts and as Finance Chair of the Republican National Committee due to the national reports of alleged misconduct; and contemporaneously, Wynn Casinos, the Nevada Gaming Control Board, and other regulators launched investigations into his conduct. The allegations undoubtedly affected his public business and political affairs, and additional reports of sexual misconduct would be of concern to a substantial number of people, including consumers, voters, and the business and governmental entities investigating precisely this kind of behavior. The public had an interest in

---

(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Shapiro*, 133 Nev. at 39, 389 P.3d at 268 (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)).

understanding the history of misconduct alleged to have been committed by one of the most recognized figures in Nevada, and the article directly relates to that interest.

Wynn further argues that, even if the article relates to an issue of public interest, the district court erred in concluding the communication was published without knowledge of its falsehood (i.e., that it was published in "good faith," NRS 41.637; NRS 41.660(3)(a)). "[A]n affidavit stating that the defendant believed the communications to be truthful or made them without knowledge of their falsehood is sufficient to meet the defendant's burden absent contradictory evidence in the record." *Stark*, 136 Nev. at 43, 458 P.3d at 347. Here, AP Respondents filed such an affidavit.

In rebuttal, Wynn points to what he claims to be contradictory evidence in the record. Most notably, he asserts that the Chicago complaint was absurd on its face, and therefore, AP Respondents must have known it was false. He also points to a text sent by Garcia Cano to a coworker shortly after reviewing the complaint in which she wrote "[o]ne of [the complaints] is crazy." However, we agree with the district court that this evidence is not sufficient to establish, by a preponderance of the evidence, that AP Respondents were aware of the complaint's falsity. While the narrative contained in the complaint is unusual, it was not so unrealistic as to put AP Respondents on notice as to its falsity, and Garcia Cano's characterization of the complaint as "crazy" is not persuasive evidence that she knew it to be false.[5] Importantly, because the identifying information in the complaint received by Garcia Cano was redacted, it would have been fruitless for AP

---

[5]We have considered the additional evidence Wynn points to in this regard and are not persuaded that it demonstrates that AP Respondents knew the complaint was false.

Supreme Court
of
Nevada

(O) 1947A

Respondents to investigate further at the time, and nothing in LVMPD's response to the unredacted complaint would have put AP Respondents on notice that the story was false.

Therefore, we agree with the district court that the article was a good faith communication in furtherance of the right to free speech in direct connection with an issue of public importance. Because AP Respondents met their burden under the first prong, we now turn to the second prong of the anti-SLAPP analysis, first discussing the burden required of a public figure plaintiff to establish actual malice.

*A public figure plaintiff's burden under the second prong*

As noted, under the second prong of the relevant framework, the court must determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim. NRS 41.660(3)(b). Because Wynn is a public figure, to prevail at trial on his defamation claim, he must prove by clear and convincing evidence that the publication at issue was made with *actual malice*.[6] *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 719, 57 P.3d 82, 90 (2002). Wynn argues that his evidence of actual malice at this stage need not meet the clear and convincing standard in order to establish a probability of prevailing on his claim because prong two merely requires a "prima facie" probability of prevailing on the claim. AP Respondents, however, assert that Wynn's evidence of actual malice must meet the clear and convincing standard. We

_____

[6]To prevail on his defamation claim, Wynn is also required to show "(1) a false and defamatory statement by [the] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault . . . ; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 718, 57 P.3d 82, 90 (2002). However, the only element reasonably in controversy on appeal is Wynn's ability to establish actual malice.

 

have never directly discussed a plaintiff's burden under the second prong when that prong requires "prima facie" evidence of success but the plaintiff's claim requires "clear and convincing" evidence to prevail at trial.

We have described the second prong of an anti-SLAPP analysis as requiring the plaintiff to show that his claim has at least "minimal merit." *Abrams v. Sanson*, 136 Nev. 83, 91, 458 P.3d 1062, 1069 (2020). Minimal merit exists when the plaintiff makes "a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002) (quoting *Matson v. Dvorak*, 46 Cal. Rptr. 2d 880, 886 (Ct. App. 1995)). But a favorable judgment in a public figure defamation claim may only be sustained if the evidence is sufficient for the jury, *by clear and convincing evidence*, to infer that the publication was made with actual malice. *Pegasus*, 118 Nev. at 721-22, 57 P.3d at 92.

The Legislature has declared that "[w]hen a plaintiff must demonstrate a probability of success of prevailing on a claim pursuant to NRS 41.660, . . . the plaintiff must meet the same burden of proof that a plaintiff has been required to meet pursuant to California's [anti-SLAPP] law." NRS 41.665(2). Thus, we turn to California law to resolve the issue at hand.

California caselaw regarding a plaintiff's burden of putting forth prima facie evidence supports the conclusion that, under the second prong, a plaintiff must provide evidence that would be sufficient for a jury, *by clear and convincing evidence*, to reasonably infer that the publication was made with actual malice. *See, e.g.*, *Padres L.P. v. Henderson*, 8 Cal. Rptr. 3d 584, 594 (Ct. App. 2003) ("The plaintiff must make a prima facie showing of facts that would be sufficient to sustain a favorable judgment

SUPREME COURT
OF
NEVADA

(O) 1947A

9

under the applicable evidentiary standard."); *Robertson v. Rodriguez*, 42 Cal. Rptr. 2d 464, 470 (Ct. App. 1995) (holding that where an element of a claim must be proven by clear and convincing evidence at trial, the sufficiency of the plaintiff's prima facie showing on an anti-SLAPP motion is determined with the higher standard of proof in mind); *Looney v. Superior Ct.*, 20 Cal. Rptr. 2d 182, 192-93 (Ct. App. 1993) (concluding that at the "summary judgment [stage] in a case where plaintiff's ultimate burden of proof will be by clear and convincing evidence . . . the evidence and all inferences which can reasonably be drawn therefrom must meet that higher standard" (internal quotation marks omitted)).

We therefore hold that to demonstrate by prima facie evidence a probability of success on the merits of a public figure defamation claim, the plaintiff's evidence must be sufficient for a jury, by clear and convincing evidence, to reasonably infer that the publication was made with actual malice. In other words, while the plaintiff at this prong must prove only that their claim has minimal merit, a public figure defamation claim does not have minimal merit, as a matter of law, if the plaintiff's evidence of actual malice would not be sufficient—even if credited—to sustain a favorable verdict under the clear and convincing standard.

Wynn argues that requiring him to meet a clear and convincing evidence standard at this stage of the proceedings would violate his constitutional right to a civil jury trial. *See Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 635 (Minn. 2017) (holding that a portion of Minnesota's anti-SLAPP law violated the constitutional right to a jury trial because it required the nonmoving party to produce "clear and convincing [evidence] . . . that the moving party's acts are not immune" (internal quotation marks omitted)). To be sure, in *Taylor v. Colon*, we

previously upheld the second prong of Nevada's anti-SLAPP statutes as constitutional, partly because the prima facie standard does not interfere with a jury's fact-finding abilities. 136 Nev. 434, 439, 482 P.3d 1212, 1216 (2020).[7] But importantly, "whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989). And even outside of the anti-SLAPP context, "[t]he question of actual malice goes to the jury *only* if there is sufficient evidence for the jury, *by clear and convincing evidence*, to reasonably infer that the publication was made with actual malice." *Pegasus*, 118 Nev. at 721-22, 57 P.3d at 92 (emphases added). Because actual malice is a question that does not go to a jury unless the evidence is sufficient for a jury to conclude that it meets the clear and convincing standard, requiring the plaintiff's evidence to satisfy that showing at the second prong of an anti-SLAPP analysis does not deny a plaintiff their constitutional right to a civil jury trial. Our holding in *Taylor* did not preclude a requirement that when an element of a particular claim requires the plaintiff to satisfy a clear and convincing evidence standard at trial, the plaintiff's evidence at the second prong must be sufficient for a jury to conclude that standard has been satisfied if the evidence is credited. In holding today that such a requirement exists, we do not replace the prima facie evidence standard;

---

[7]In a previous version of NRS 41.660, plaintiffs bore a clear and convincing burden of proof standard at the second prong. The Legislature amended that statute in 2015 to require only prima facie evidence. 2015 Nev. Stat., ch. 428, § 13, at 2455. Our holding does not rewrite the statute to return the plaintiff's burden of proof to a clear and convincing standard; it merely recognizes that evaluating whether plaintiff has presented prima facie evidence of actual malice must take into account the clear and convincing standard required to prevail on this type of claim.

rather, the requirement that evidence of actual malice if viewed favorably could meet the clear and convincing standard is merely a part of the plaintiff's prima facie showing.

*Wynn failed to meet his burden under the second prong*

"[A]ctual malice is proven when a statement is published with knowledge that it was false or with reckless disregard for its veracity." *Pegasus*, 118 Nev. at 722, 57 P.3d at 92. "Reckless disregard for the truth may be found when the 'defendant entertained serious doubts as to the truth of the statement, but published it anyway.'" *Id.* (quoting *Posadas v. City of Reno*, 109 Nev. 448, 454, 851 P.2d 438, 443 (1993)).

This court has routinely looked to California courts for guidance in the area of anti-SLAPP law. *Coker v. Sassone*, 135 Nev. 8, 11, 432 P.3d 746, 749 (2019). California courts treat this prong as they do a motion for summary judgment; thus, under comparable Nevada law regarding motions for summary judgment, "the evidence, and any reasonable inferences drawn from it, must be viewed in [the] light most favorable to the nonmoving party." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).[8] Here, even when the evidence is considered in the light most favorable to him, Wynn has failed to present sufficient evidence to sustain a favorable verdict finding actual malice. His attempts to establish AP Respondents' knowledge of falsity or reckless disregard for the veracity of

---

[8]We note that prior to 2013, NRS 41.660 required the district court to treat a special motion to dismiss as a motion for summary judgment. *See* 2013 Nev. Stat., ch. 176, § 3, at 623. Though the Legislature removed this language in 2013, subsequent amendments in 2015 restructured the statute in a way that once again tracks the procedural standards that apply to a motion for summary judgment. *See Coker*, 135 Nev. at 10, 432 P.3d at 748 (recognizing that "[a]s amended, the special motion to dismiss again functions like a summary judgment motion procedurally").

SUPREME COURT
OF
NEVADA

(O) 1947A

the complaint fall short of a prima facie showing that could meet the heightened clear and convincing standard. *See Gruber v. Baker*, 20 Nev. 453, 477, 23 P. 858, 865 (1890) (describing clear and convincing evidence as satisfactory proof that is "so strong and cogent as to satisfy the mind and conscience of a common man").

Similar to his arguments under prong one, Wynn argues that the Chicago complaint was implausible and points to the failure by AP Respondents to investigate further before publishing as evidence of actual malice. Again, while the complaint contained unusual elements, that does not necessarily mean that the gist of the allegations reported by AP Respondents—that Wynn sexually assaulted a woman in Chicago in the 1970s—was untrue or that AP Respondents held serious doubt about those allegations. As explained, because all identifying information in the complaint was redacted, it was not possible to meaningfully investigate further as long as that information was unknown. Wynn again points to Garcia Cano's text describing the complaint as "crazy" to establish her subjective doubt. But even considered in the light most favorable to Wynn, calling the complaint "crazy" could not meet the required clear and convincing standard that Garcia Cano believed the allegation to be false or that she recklessly disregarded whether it was true. Wynn also attempts to establish reckless disregard by highlighting AP Respondents' motivation to publish the story quickly. But news organizations often have a motivation to publish stories before their competitors, and in the absence of serious doubt regarding the veracity of the statement, such a desire could

not establish a reckless disregard for the truth.[9] *Pegasus*, 118 Nev. at 722, 57 P.3d at 92.

This evidence would not be sufficient for a jury to find, by clear and convincing evidence, that AP Respondents published the story with knowledge that it was false or with reckless disregard for its truth.[10] Because Wynn did not produce sufficient evidence of actual malice, he failed to establish with prima facie evidence a probability of prevailing on his claim, requiring dismissal.

## CONCLUSION

Nevada's anti-SLAPP statutes were designed to limit precisely the type of claim at issue here, which involves a news organization publishing an article in a good faith effort to inform their readers regarding an issue of clear public interest. AP Respondents met their burden under the first prong to establish, by a preponderance of the evidence, that their article was a good faith communication in furtherance of the right to free speech in direct connection with an issue of public concern. Wynn, on the other hand, did not establish with prima facie evidence a probability of prevailing on the merits of his defamation claim because he failed to meet the clear and convincing evidence standard under the second prong that is

---

[9]At most, the evidence could show that AP Respondents may have held *some* doubt as to the veracity of the complaint. But that does not constitute a prima facie showing for actual malice, which requires a finding the defendant held *serious* doubt. *See Wynn v. Smith*, 117 Nev. 6, 17, 16 P.3d 424, 431 (2001) (reversing a jury verdict finding actual malice because the jury instructions omitted "serious" before "doubt," leading the jury to apply a lower standard).

[10]Wynn points to some additional evidence of actual malice not discussed in this opinion, but we are not convinced that it is sufficient to meet his burden under this prong.

applicable to his public figure defamation claim. We therefore affirm the district court's order granting the renewed special motion to dismiss the complaint.

_____, J.
Parraguirre

We concur:

_____, C.J.
Cadish

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Bell